NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

LUIS TORRES GONZALEZ          :
                              :
            Plaintiff,        :          Hon. Dennis M. Cavanaugh
                              :
        v.                    :          **OPINION**
                              :
                              :          Civil Action No: 10-cv-2371 (DMC)
MICHAEL J. ASTRUE,            :
Commissioner of Social Security, :
                              :
                              :
            Defendant.        :
_____:

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the Court upon the appeal of Luis Torres Gonzalez ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for a period of disability and disability insurance benefits under Title II and his application for supplemental security income under Title XVI of the Social Security Act ("Act"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

    After reviewing the submissions of both parties, for the following reasons, the final decision entered by the Administrative Law Judge ("ALJ") is **affirmed**.

1

# I.  BACKGROUND

## A.  PROCEDURAL HISTORY

On July 28, 2006[1], the claimant filed applications for a period of disability and disability insurance benefits, as well as supplemental security income.  (Tr. 14, 24).  Both applications listed the onset date of the disability as February 28, 2003.  (Tr. 68, 73).  The claims were initially denied on January 11, 2007.  They were reconsidered at the request of Appellant and again denied on April 20, 2007.  On May 7, 2007, the Appellant filed a timely written request for a hearing.  (Tr. 14).  A hearing was held in Newark, New Jersey on August 11, 2008 in front of Administrative Law Judge Cameron Elliot.  Id.  Appellant testified with the assistance of a Spanish interpreter.  Id.  The Administrative Law Judge ("ALJ") issued his decision on September 16, 2008 denying Appellant's claim.  (Tr. 23).  On October 16, 2008, Appellant filed a request for review of the ALJ's decision.  (Tr. 65-6).  On October, 21, 2008, the claimant re-filed his claim for benefits which was granted on June 3, 2009.  (Tr. 132).  On April 21, 2010, the Appeals Council denied the request for review of the original application.  (Tr. 1).  Appellant then filed a complaint with this Court.

## B.  FACTUAL HISTORY

### 1. The Findings of the Administrative Law Judge

ALJ Elliot  made the following seven findings regarding Plaintiff's application for a period of disability and disability insurance benefits: 1) the claimant met the insured status requirements of the Social Security Act through December 31, 2007; 2) the claimant has not engaged in substantial gainful activity since February 28, 2003; 3) the claimant has the severe impairments of diabetes

---

[1] While Plaintiff's Brief refers to an application on September 2, 2006, both the ALJ's opinion and the Government use the date of July 28, 2006. This court will rely on the date most favorable to Plaintiff: July 28th, 2006.

mellitus, gout, and osteoarthritis; 4) the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); 5) the claimant has the residual function capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to frequent lifting and carrying of no more than thirty pounds; 6) the claimant is capable of performing his past relevant work as a shipping porter because the work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity (20 CFR 404.1565 and 416.965); 7) the claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2003 through September 16, 2008, the date of the decision.

## 2.  Plaintiff's Medical History and Evidence

Plaintiff's disability claims since February 28, 2003 have been related to diabetes, gout, osteoarthritis, headaches, dizziness, high blood pressure, anxiety, and vision problems.  (Tr. 83). Plaintiff's medical history is summarized below.

### i. Medical Evidence Prior to the Alleged Onset Date

Plaintiff was hospitalized multiple times, beginning in 1999 and ending in 2006, for various ailments.  Plaintiff also sought outpatient treatment for his illnesses.

From 1982 through 1983, Plaintiff did not work and was supported by his family.  From 1983 through 1984, Plaintiff received injections in both of his feet, which he stated helped with the pain.  On June 24, 1999, Plaintiff was hospitalized following complaints of abdominal pain, vomiting and diarrhea.  As the ALJ's opinion states, the physical examination confirmed distention and hypoactive bowel sounds, diffuse tenderness, and nonpalpable organomegaly.  (Tr. 19).  The

diagnosis was acute renal intrinsic disease and small bowel partial obstruction.  Plaintiff was discharged five days later, on June 29, 1999.  Id.

In January, February, and April of 2002, Plaintiff had elevated levels of glucose.  In January of 2002, Plaintiff also had elevated levels of cholesterol and triglycerides.  In May of 2002, testing revealed degenerative osteoarthritic changes with degenerative spurs in and around the ankle joint along with talonavicular articulation dorsally.  (Tr. 19).

On November 23, 2002, Plaintiff was admitted to Columbus Hospital. He was diagnosed with acute severe erysipelas of the right foot and leg, acute, severe cellulitis of the right leg, diabetic ulcer of the right foot, uncontrolled type 2 diabetes mellitius, acute gouty arthritis of the right knee and left foot, hyperuricemia, anemia of chronic disease, hypertension, and diabetic peripheral occlusive arterial disease.  Plaintiff was discharged on December 10, 2002 and his condition was listed as "fair compared with his condition upon admission."  (Tr. 20).

In December of 2002, Plaintiff had an MRI performed on his knee.  It revealed a tear of the medial meniscus.  However, there is no record of follow up treatment, tests, or surgeries for the injury.  (Tr. 233).

*ii. Medical Evidence from the Alleged Onset Date: February 28, 2003.*

Plaintiff lists the onset date on his application as February 28, 2003.[2]  Plaintiff's medical records indicate heightened glucose levels in March, May, and August of 2003.  Additionally, in 2003, Plaintiff's cholesterol and triglycerides were also elevated.

The record includes outpatient registration forms dated August 11th, 25th, and 27th, 2003 (Tr.

---

[2]While there was some confusion over this date at his hearing, it appears the parties clarified February 28, 2003 as the onset date, since it is reflected in the ALJ's opinion and Plaintiff's memorandum to the Appeal's Council. (Tr.14, 131).

255- 257), July 2nd and 30th, 2003 (Tr. 270, 271), June 4th, 2003 (Tr. 272), May 12th, 2003 (Tr. 273),

April 30th, 2003, (Tr. 276), and March 26th, 2003 (Tr. 277).  Further, copies of lab and test results

are included and dated August 7th, 2003, May 8th, 2003, and March 21, 2003 (Tr. 258, 275, 278).

The "Chest PA & Lateral" report dated August 7th, 2003 notes a lack of evidence of lung disease.

(Tr. 267).

       A radiology report from July 28th, 2007 notes Plaintiff was found to have a mildly enlarged

liver consistent with fatty infiltration.  (Tr. 371).  An electrocardiogram ("EKG") was also performed

around that time wherein Dr. Moein Vaseghi found normal LV systolic function with a borderline

left ventricular diatolic dysfunction and mild to moderate concentric left ventricular hypertrophy.

There is mild left atrial dilation.  (Tr. 373).  The aortic valve appears severely sclerotic and calcified

with reduced cusp excursion and evidence of possible mild aortic valvular stenosis.  Id.  A March

2008 copy of another EKG summarizes the results as normal, noting a sinus rhythm with normal

limits.  (Tr. 403-4).

       On June 10th, 2008, Plaintiff had an endoscopy.  (Tr. 402).  The post-operative diagnosis was

divericulosis.  Id.  The Record reflects no hospital admissions since 2002.

                    *iii. Psychiatric Evaluations of Plaintiff by Drs. Tan & Miskin*

       The record consists of two psychiatric evaluations of Plaintiff, one by Dr. Tan and one by Dr.

Miskin.  ALJ Elliot gives Dr. Tan's evaluation greater weight than Dr. Miskin's, citing the lack of

consistency of Dr. Miskin's evaluation with the evidence and the plaintiff's testimony.  (Tr.18).

       Dr. Tan's psychiatric review technique form consists of a medical summary and "Paragraph

B" criteria.  The form states that Plaintiff is negative for organic mental disorders, schizophrenic,

paranoid, and other physiological disorders, mental retardation, anxiety related disorders,

somatoform disorder, personality disorders, substance addiction disorders, and autistic/other pervasive developmental disorders. (Tr. 341-50).

Dr. Tan reported Plaintiff as having a hearing impairment that was not severe but additionally reported a coexisting nonmental impairment that required referral to another medical speciality. Dr. Tan based the medical disposition on category 12.04 Affective Disorders. (Tr. 341). Under 12.04, Dr. Tan diagnosed Plaintiff with "dysthymic disorder with anxiety features." (Tr. 344).

Dr. Tan's report also includes "B Criteria" review which consists of four functional areas that are set out in the disability regulations for evaluating mental disorders, as well as in section 12.00C4 Listing of Impairments. The first Functional Limitation area is "restriction of activities of daily living." Plaintiff's limitations would need to be marked or extreme to satisfy the functional criteria. Dr. Tan listed plaintiff's limitation as mild. (Tr. 351). This is supported by Dr. Tan's note that Plaintiff has no history of past or present psychological treatment on record. (Tr. 353).

The second Functional Limitation Area is "difficulties in maintaining social function." The degree needed to satisfy the limitation is marked or extreme. Dr. Tan listed the plaintiff's limitation as "none." Dr. Tan's notes mention Plaintiff being pleasant, cooperative, and coherent, supporting his finding that Plaintiff suffers no limitations in social functions. (Tr. 353).

The third Functional Limitation area is "difficulties in maintaining concentration, persistence, or pace." The degree of limitation needed to satisfy the functional criteria is marked or extreme. Here, Dr. Tan listed Plaintiff as having "mild" limitation. (Tr. 351). Dr. Tan's notes regard the plaintiff's ability to do simple calculations, think in the abstract, and intact concentration and attention. (Tr. 353).

The fourth, and final, functional limitation area is "number of episodes of decompensation."

6

The degree of limitation that satisfies functional criteria is at least three.  Dr. Tan listed Plaintiff at "none."  (Tr. 351).  Dr. Tan's notes do not show any evidence of decompensation. (Tr. 353).  Furthermore, the plaintiff's medical records and testimony show no evidence of an episode of decompensation.

Dr. Miskin's consultative examination notes Plaintiff was not presently in psychiatric care but depicted himself as being homebound with few interests.  Plaintiff claims to have had some psychiatric treatment a long time ago, but there is no evidence to support that claim.  (Tr. 338).

Dr. Miskin's mental status examination describes Plaintiff as cooperative, coherent, compliant, with good comprehension, speech, and response time.  Plaintiff's memory is clear and there is no evidence of thought disorders.  Plaintiff's ability to do calculations is limited, not exceeding basic, elementary numerical tasks.  Dr. Miskin also reports Plaintiff has a limited ability to understand, carry out, and remember instructions.  However, plaintiff's ability to think abstractly, his judgment, and his insight are all adequate.  Additionally, Dr. Miskin found Plaintiff responds appropriately to supervision, co-workers, and mild work pressures and  manages most of his own needs.  Overall, Dr. Miskin gives Plaintiff a fair prognosis with outpatient psychiatric treatment suggested.  Dr. Miskin lists his diagnostic impression as "dysthymic disorder with anxiety features," chronic, moderate, severity.  (Tr. 340).

### iv. Physical Examination by Dr. John Augustin

The record reflects that Dr. John Augustin performed a consultative medical examination on Plaintiff on December 23, 2006.  Dr. Augustin's report recounts Plaintiff suffering from diabetes since 2002, arthritis since 2004, and gout for a long time.  Additionally, Plaintiff has occasional dizziness and suffers from arterial hypertension.  He also notes Plaintiff's complaints of occasional

headaches for more than one year. (Tr. 332).

In describing his physical examination, Dr. Augustin noted the plaintiff's blood pressure was 140 over 90 and his uncorrected vision in the left eye was 20/40, with the right eye being 20/30.  (Tr. 333).  Also, Dr. Augustin noted "the extremities revealed no edema or varicosities. The claimant has some swelling involving the proximal interphalangeal joint of the right, middle finger."  Id.  The ALJ's opinion reflects all of this information.  Dr. Augustin reports the claimant could make a fist and perform fine manipulation, that his deep tendon reflexes and vibrations were normal, and was able to perform the straight leg raising test with normal bilateral results.  (Tr. 20).  In addition, Dr. Augustin's report notes the lungs are audibly clear and there is no murmur, split, or gallop to the heart.  Dr. Augustin describes the heart as "normal."  Id.  His summary of the examination notes a history of arterial hypertension along with diabetes mellitus, gout, degenerative joint disease, and headache.  (Tr. 334).

*v. Disability Reports from Plaintiff and Field Office*

The record contains several disability reports.  The first disability report appears at page 82 of the Transcript.  On this report, the Plaintiff lists his illnesses, injuries, or conditions as "diabetes, gout, arthritis, headaches, dizziness, high blood pressure, anxiety attacks, and vision problems." (Tr. 83).  The onset date is February 28, 2003, and Plaintiff admits to not working at all after his symptoms first began to bother him.  (Tr. 83).  Plaintiff's last day of work is listed as February 28, 2003.  Plaintiff says this was because he was laid off from his job, and has been sick ever since.  (Tr. 83).  In describing his previous employment, Plaintiff lists his job as shipping in the food industry. (Tr. 84).  This job was from 1994 until February 28, 2003.  Id.  He was not required to write, complete reports, or perform any duties of the like.  He was required to use machines, tools, and

equipment to help in lifting and carrying boxes of frozen meals from freezers to trucks.  Id.  On this report, Plaintiff lists the heaviest weight lifted as "50 pounds," but also claims the "weight frequently lifted" as being "50 lbs. or more."  (Tr. 85).

The next disability report is from the field office dated September 5, 2006.  The interview was conducted in person, and Plaintiff had no difficulty in hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using hands, or writing.  (Tr. 92).  Plaintiff is described as a "very pleasant and cooperative man" with a very swollen right hand.  Id.

A function report from Plaintiff, dated September 8, 2006, recorded the plaintiff's own account of how his impairments limit his activities.  (Tr. 101-8).  Plaintiff lives alone in a boarding house and his impairments affect his ability to care for his hair and shave.  (Tr. 101-2).  He does not prepare any of his own meals due to the space limitations in the room he rents,  goes outside four times a day and walks as his main means of travel.  (Tr. 104).  He also claims that he spends time with other people, three or four times a week.  He goes to the community center on a regular basis. (Tr. 105).  However, he says he is "mostly alone" due to his impairments.  (Tr.106).  All other disability reports in the record are fairly consistent with the reports detailed above.

### 3. Plaintiff Luis Torres Gonzalez's Testimony

Plaintiff, Luis Torres Gonzales, testified at the ALJ hearing on August 11, 2008 with the assistance of a Spanish interpreter, Rosita Perez.  The plaintiff's attorney, Agnes Wladyka, was also present.  Plaintiff testified that he is fifty-seven years old and has a fifth grade education having attended school in Puerto Rico.  (Tr. 49).  Plaintiff was unable to recall if he had stopped working in 2004 or 2005.  However, his attorney quickly clarified that his earning records and files indicated

it was 2002.  (Tr. 50).  Plaintiff testified that he stopped working due to his diabetes.  (Tr. 51).  In 2002, he was admitted to Columbus Hospital for nineteen days for his leg, which had grown swollen and discolored.  (Tr. 51).  He continued to visit the outpatient clinic at Columbus Hospital, where he received medications.  (Tr. 52).  Plaintiff is currently a patient of Dr. Delacruz, whom he sees on a weekly to bi-weekly basis  to receive medications and treatments.  Id.

Plaintiff testified that he continues to have swelling in the hands and feet, due to gout in both feet and his left arm.  (Tr. 53).  Upon specific questioning by his attorney, Plaintiff explained that the condition is painful and it is difficult for him to grab things due to the pain.  (Tr. 54).  To counteract the pain, he takes medication and often soaks his hands and feet in epsom salt.  Id. Additionally, Plaintiff was hospitalized in November 2002 due to ulcers that had developed on his legs.  (Tr. 55).  Plaintiff testified that he is given cream to put on his legs as a result.  (Tr. 55). Plaintiff also testified to vision problems and headaches, but only after answering no originally and being re-questioned by his attorney.  Id.  Other physical impairments Plaintiff testified about included difficulty walking due to leg pain, chest pain "a long time ago" and depression.  (Tr. 58). However, he admitted  that there was no follow up to a meniscus tear in his right knee, and that his depression presents itself only in trouble with women and his not going out as often as he would like. Id.  Plaintiff testified that he is able to cook for himself and care for himself.  Id.

In reference to his last job as a porter for a shipping company, Plaintiff testified that his job was to move food from refrigerators to the trucks and from the trucks to the refrigerator.  (Tr. 60). He said the boxes were usually around 25 or 30 pounds.  (Tr. 61).  Currently, Plaintiff said he is able to carry a gallon of milk with his right hand about a block.  Id.  However, Plaintiff claims he is unable to carry a gallon of milk with his left hand.  Id.

C.  **PLAINTIFF'S ARGUMENT**

Plaintiff's argument mainly consists of four points: 1) the Commissioner failed to properly evaluate the medical evidence; 2) the ALJ  failed to properly evaluate the medical evidence because Plaintiff does meet a listed impairment; 3) Plaintiff's impairments do, in fact, either singularly or in combination restrict Plaintiff from engaging in substantial and gainful activity; and, 4) the ALJ made a mistake as a matter of law in finding Plaintiff is capable of performing his past relevant work.

Plaintiff argues that the ALJ failed to give proper weight to his complaints.  Specifically, they claim the ALJ was incorrect in assessing Plaintiff's complaints of headaches, hypertension, anxiety, depression, acute renal intrinsic disease, history of small bowel partial obstruction, anemia, meniscal tear in the knee, hyperuricemia, and dysthymic disorder as non-severe impairments.  Plaintiff suggests the ALJ was incorrect in using Plaintiff's obvious confusion in his hearing to support his finding of severe/non-severe impairments.  Additionally, Plaintiff argues the ALJ improperly weighed the various medical evidence, specifically in disregarding Dr. Miskin's report.  Plaintiff argues that the four elements the ALJ should use in evaluating the Commissioner's decision - objective medical facts, diagnosis or medical opinions based on those facts, subjective evidence obtained or disability testified to by the claimant, and the claimant's age, education, and work experience - were improperly weighted when the ALJ found Dr. Tan's opinion authoritative over Dr. Miskin's.  (Pl.'s Br. 8).

Plaintiff argues that the Commissioner was incorrect in his determination that Plaintiff's impairments do not preclude him from engaging in substantial gainful activity.  Id.  Plaintiff's argument focuses on the ALJ's failure to give more weight to plaintiff's testimony and the

11

doctor's opinions, though they do not specify in their brief which opinion they believe discredit's the ALJ's finding regarding plaintiff's ability to preform substantial, gainful activity.  (Pl.'s Br. 14).  Plaintiff argues that there were no objective medical findings to support the ALJ's determination of plaintiff's ability to preform substantial, gainful activity.

Plaintiff next argues  the ALJ  incorrectly evaluated  the medical evidence and therefore, incorrectly found that Plaintiff does not meet a listed impairment.  Plaintiff argues that he does meet or equal a listed impairment, specifically 9.08 diabetes mellitus.  Additionally, Plaintiff states that his numerous "secondary conditions," including cardiovascular issues, circulatory issues and arterial disease, contribute to his meeting a listed impairment.  (Pl.'s Br. 17 - 20). Plaintiff argues that the combination of impairments equal a listing.  Plaintiff lists the three situations when a medical equivalence ruling would be appropriate: 1) claimant's impairment is listed but the specific criteria is not available in the medical evidence and there are other medical findings that are of equal or greater significance to the impairment; 2) claimant's impairment is unlisted, but the criteria for an analogous impairment is listed and can be used for comparison with the medical records; or, 3) claimant has more than one impairment, none of which equal or meet a listed impairment, but when combined are so severe that they are medically equivalent to the listed set they most closely resemble.  (Pl.'s Br. 20).  Plaintiff contends, citing <u>Livingston v. Califan</u> for support, the ALJ's failure to properly develop the record in regards to the medical evidence is an inadequate discharge of his duty.  (Pl.'s Br. 21).

Finally, Plaintiff argues that the ALJ erred as a matter of law in finding Plaintiff capable of preforming his past relevant work.  Instead, Plaintiff argues, the ALJ relied on his own opinion, ignoring all relevant evidence and failing to provide a satisfactory basis.  (Pl.'s Br. 21).

Plaintiff states, "there must be some medical opinion from an examining physician which supports the ALJ's residual functional capacity finding," without citing any law to support this bold assertion.

Plaintiff further reiterated these arguments in his Reply to Defendant's Memo of Law. Plaintiff says there was no mention of the cardiac impairment in the ALJ's decision and that the ALJ failed to find impairments sufficiently severe. Plaintiff also suggests the ALJ did not give enough weight to his mental impairments. Plaintiff cites Dr. Miskin's report for support. (Pl.'s Reply Br. 3). In the reply brief, Plaintiff contends that the ALJ's failure to consider all the relevant evidence was because he neglected to perform to the medical equivalency determination. (Pl.'s Br. 4).

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really

constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  Stewart v. Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

Nonetheless, the "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  As such, it does not matter if this Court "acting de novo might have reached a different conclusion" than the Commissioner.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).  "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### III.  APPLICABLE LAW

#### A.  THE FIVE-STEP PROCESS FOR DETERMINING WHETHER PLAINTIFF IS DISABLED

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A).  A claimant bears the burden of establishing their disability.  Id. § 423(d)(5)(A).  The Social Security Administration has established a five-step process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

Step one requires the reviewing official to consider if the claimant is performing any

14

work activity.  If they are, they must assess if it is considered substantial, gainful activity. (20 C.F.R. § 404.1520(i)).  Substantial work activity is work that involves doing significant physical or mental activities (20 C.F.R. § 404.1572(a) and § 416.972(a)).  Gainful work activity is work normally done for profit, whether or not a profit is realized (20 C.F.R. § 404.1572(b)).  If it is found that the claimant is preforming substantial, gainful activity, then the claimant is not disabled.  If it is not found that the claimant is preforming substantial, gainful activity, then we proceed on to step two. (20 C.F.R. § 404.1520(i) and 404.1520(b)).

Step two requires the reviewing official to determine if the claimant has a medical impairment that is severe or a combination of impairments that are severe.  In order for an impairment, or a combination of impairments, to be severe, the impairment, or combination of impairments, must significantly limit an individual's ability to preform basic work activities. (20 C.F.R. § 404.1520(c) and 416.920(c)).  If an individual is not determined to have a severe impairment or a severe combination of impairments, the individual is not disabled.  If the individual is determined to have a severe impairment or a severe combination of impairments, then proceed to step three.

Step three requires the Commissioner to evaluate the claimant's impairment and determine if it is equal to, or exceeds, one of those specified in the Listing of Impairments in Appendix 1 of the regulations ("Listings").  Evaluation of Disability, 20 C.F.R. §§ 404.1520(d); Evaluation of Disability, 20 C.F.R. §§ 416.920 (2003).  If the claimant's impairments are found to be equal or greater than one of the Listings, the claimant is disabled and entitled to benefits. Id.  If the impairments are not equal to, or greater than, one of the Listings, than the claimant's residual functioning capacity ("RFC") must be determined.  Id.  RFC is an individual's ability to

15

do physical and mental work activities despite limitations from his impairment. Your RFC, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2003).  A claimant's RFC is determined by considering all relevant  evidence in the record.  Id.  Once the claimant's RFC is determined, the analysis progresses to step four.

Step four evaluates the RFC determination and the claimant's past  relevant work. Evaluation of Disability, 20 C.F.R. § 404.1520(iv) (2003). The impairment must be found to prevent one from doing past relevant work.  Id.  If it is determined that the claimant is not prevented from doing their past relevant work, than the claimant is not disabled.  If it is determined that the claimant is prevent from doing their past relevant work, then the analysis proceeds to step five.

At step five, finally, it must be determined if the claimant can perform any other  work in the national economy that is consistent with his or her medical impairments, age, education, past work experience, and RFC.  Id.; and see, Evaluation of Disability, 20 C.F.R. § 416.920(g) (2003). If the claimant is found unable to preform other work, he or she will be found disabled. Id.  However, if the claimant is found able to preform other work, he or she will not be found disabled.  Id.  The claimant, generally, continues to have the burden of proving disability at this final step.  However, a limited burden is shifted to the Social Security Administration to provide evidence which demonstrates the availability of other work in significant numbers in the national economy for the claimant to preform, given his or her specific RFC.  Evidence, 20 C.F.R. § 404.1512(g) (2003).

## IV. ANALYSIS

On appeal, Plaintiff brings up several arguments supporting the contention that the ALJ

erred in finding claimant not disabled from February 28, 2003 through September 16, 2008.

Plaintiff's argument primarily consists of four points: 1) the Commissioner and the ALJ failed to give adequate weight to Plaintiff's subjective complaints of pain; 2) the ALJ incorrectly developed the record in determining Mr. Gonzalez was capable of medium work; 3) Plaintiff's impairments meet Listing 1.02, Listing 9.08, or the exception clause; and, 4) the ALJ made a mistake as a matter of law in determining Plaintiff's RFC level.  Additionally, Plaintiff suggests that the approval of a subsequent application for Social Security beginning in 2008 supports the finding that the medical evidence was improperly evaluated.  Plaintiff requests this Court overrule the previous decisions and grant his benefits dating back to February 28, 2003.[3]  At the very least, Plaintiff requests that we remand this case for another review of the medical evidence. The Commissioner contends that the ALJ's decision should be affirmed, as he adhered to the Social Security Administration regulations, applied the proper legal standards, and the record shows ample medical evidence to support the decision.

In Plaintiff's brief to the court, he raises the issue of his subsequent application for Social Security, which he claims is based on essentially the same information as the application currently under review by this Court.  Plaintiff believes the grant by the Social Security Administration in June of 2009 supports his contention that the ALJ decided his first application incorrectly.  The Government counters this point.

This Court is charged with reviewing the ALJ's decision on this application to determine if the Commissioner and ALJ's decision is supported by substantial evidence.  <u>Grant v. Shalala</u>,

---

[3]February 28, 2003 is the date of disability eventually agreed to by the ALJ and plaintiff's counsel. Any benefits received by Plaintiff would not begin until one month later, March 28, 2003.

989 F.2d. 1132 (3d Cir. 1993).  This Court cannot consider any information beyond what is in the record before us, and was in the record that was before the ALJ considering the application.  We cannot consider the subsequent application that was submitted in October of 2008,  in our review of the June 28th, 2006 application determination.

### A. Incorrect Evaluation of the Medical Evidence by the Commission and ALJ

Plaintiff argues the ALJ incorrectly assessed his complaints of headache, hypertension, anxiety, depression, acute renal intrinsic disease, history of small bowel partial obstruction, anemia, meniscal tear in the knee, hyperuricemia, and dysthymic disorder as non-severe impairments.  Plaintiff suggests the ALJ improperly evaluated the medical evidence, relying on his confusion during his hearing, the report of a doctor Plaintiff contends was non-examining and a failure to list the complaints on the application.

### 1. Subjective Complaints of Pain

"Subjective complaints of pain must be considered by the ALJ in making a determination of disability."  Murphy v. Schweiker, 524 F.Supp. 228, 232 (E.D.Pa. 1981).  The complaints of pain must be examined in addition to objective facts and medical opinions.  Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974).  Plaintiff's subjective complaints of pain must be viewed in light of the other evidence contained in the record.  Complaints that are disproportionate to the medical evidence may be deemed not credible.  Id.  The fact finder has to right to reject testimony all together.  Id.  However, an ALJ must consider all of the claimant's impairments.  Id.  A failure to indicate a rejection of a particular piece of evidence, along with a reason why this evidence was rejected may lead a reviewing court to the decision that the ALJ failed to consider all the evidence contained in the record.  Id.

18

In the case at hand, Plaintiff argues the ALJ was wrong in using the confusion in his testimony to discredit his subjective complaints of pain. While plaintiff's counsel argues that this was due to a language barrier, it must be noted that Mr. Gonzalez communicated through a translator at the hearing and ALJ Elliot took the time to attempt to clarify any confusion. Plaintiff's testimony contains obvious inconsistencies. Plaintiff contradicted himself at times and his testimony conflicted with other evidence in the record. The ALJ, present for the hearing and witnessing the testimony first hand, is in the best position to determine Plaintiff's credibility. "The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence...is invaluable, and should not be discarded lightly." Arnold v. Schweiker, 571 F.Supp. 526, 529 (E.D.Pa. 1983). Additionally, the ALJ, as the fact finder, has the right to reject a piece of testimony provided he give reasoning. The ALJ explained, in detail, Plaintiff's testimony. Additionally, he acknowledges the non-severe impairments, explaining his reasoning behind the classification of each impairment. (Tr. 17).

### 2. Psychiatric Reviews of Dr.'s Tan and Miskin

The ALJ relied heavily on the opinion of Dr. Benito Tan in evaluating Plaintiff's mental and psychiatric complaints and ailments. (Tr. 341-54). Plaintiff takes issue with the ALJ's explanation for crediting Dr. Tan's evaluation of Plaintiff, a non-examining physician, over Dr. Miskin's opinion, an examining physician. The Third Circuit noted, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The ALJ addresses Dr. Miskin's report stating, "I do not credit this opinion because it is not

consistent with the claimant's own testimony regarding the severity of his mental impairments...Dr. Miskin was not the claimant's treating physician." (Tr. 18). In discrediting Dr. Miskin, the ALJ relies on the only testimony in the record, that of Plaintiff. In addition, the ALJ points out that Dr. Miskin was not the treating physician. The Third Circuit has previously held that a treating physician's opinion should be given greater weight, but the Court has also ruled that the ALJ may credit the opinion of one doctor over another, provided they do not reject evidence for no reason or the wrong reason. Diaz v. Commissioner of Social Security, 577 F.3d 500, 506 (3d Cir. 2009). Here, the ALJ makes clear that he is rejecting Dr. Miskin's medical opinion because there is conflicting medical evidence from Plaintiff's testimony, his application for Social Security, and Dr. Tan's report.

The Code of Federal Regulations guides how conflicting medical evidence, and medical opinions, will be handled. Evaluating Opinion Evidence, 20 C.F.R. §404.1527(c)-(d) (2003). The examining relationship, treatment relationship, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors will be weighed and considered when evaluating the various opinions from medical experts. While Dr. Tan merely reviewed Plaintiff's files, the ALJ in this case seems to have weighed the factors and come to his conclusion that Dr. Tan's opinion is more accurate and relevant than Dr. Miskin's. His short, but concise, statement regarding Dr. Miskin's statement is adequate enough to satisfy the requirement that he address why he is discrediting him.

Since the ALJ gave reason for his rejecting Dr. Miskin's report, and because the Third Circuit has previously held that an ALJ has the discretion to reject certain reports, this court finds that there was no abuse of discretion by the ALJ in rejecting Dr. Miskin's report. Plaintiff's

20

anxiety attacks are deemed not severe and his own testimony suggests that any psychological impairments he has are not severe. The ALJ correctly characterized Plaintiff's condition.

### 3. Plaintiff's Cardiac Impairment

In Plaintiff's brief to the court, he alleges the ALJ failed to make any mention of his cardiac impairment. He details several specific cardiac impairments he has had over the years, including arterial hypertension, an atherosclerotic aorta, engorged pulmonary arteries, severely sclerotic and calcified aortic valve, an abnormal EKG and peripheral occlusive artery disease.

The ALJ addressed Plaintiff's cardiac impairments in his opinion. (Tr. 16). While the ALJ does not make reference to the various specific cardiac impairments, they were not highlighted as cause for plaintiff's entitlement to disability benefits. Plaintiff's testimony did not focus on the cardiac impairment as a central reason for disability benefits, nor were they listed on his application for benefits. His only reference, remote at best, to a cardiac impairment speaks to occasional shortness of breath. (Tr. 15). In Plaintiff's disability report, he did not list any cardiac impairment beyond high blood pressure as limiting his ability to work. While plaintiff's counsel has argued that the language barrier should afford him some leniency, the field office report based on a face-to-face interview with claimant, does not list any difficulties with understanding or communication. (Tr. 92).

Mr. Gonzalez's medical records evince various cardiac issues throughout his medical history. However, these were not listed for consideration by the Social Security Office as basis for his entitlement to benefits. Additionally, this appeal is covering the disability from July of 2003 until November of 2007. The medical record reflects that while his cardiac impairment has been sporadic throughout his history, they were not severe enough to warrant disability benefits.

### 4. Impact of Failure to List Certain Complaints on Plaintiff's Application

Plaintiff's disability report lists diabetes, gout, arthritis, headaches, dizziness, high blood pressure, anxiety attacks, and vision problems as the impairments that affect Mr. Gonzalez's ability to work.  Nowhere on this report does he specifically mention a cardiac impairment.  Additionally, Plaintiff's complaints of vision problems is unsupported by any medical evidence in the record, as are his initial complaints of headaches.  "The issues before the administrative law judge include all the issues raised by your claim."  Issues Before an ALJ, 20 CFR § 405.325(a) (2003).

### B. Plaintiff's Complaints and Ailments and their Relationship to the Listings

The Listing of Impairments gives descriptions for impairments that the Social Security Office deems severe enough to prevent gainful activity.  20 C.F.R. Pt. 404, Subpt. P app. 1 (2010).  Since Plaintiff in this case is over eighteen, only the listings in "Part A" apply.

### 1. Listing 9.08

Listings in 9.00 focuses on the Endocrine System.  Listing 9.08 specifically deals with diabetes mellitus.  It requires that the diabetes mellitus be accompanied by either neuropathy, "demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait, and station" or "acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests." Id.

The ALJ addresses these issues.  He admits Plaintiff suffers from diabetes mellitus but notes there is no medical evidence to suggest neuropathy, acidosis, retinitis or obesity.  (Tr. 18).  The medical evidence contained in the record supports this finding, both in opinions by reviewing medical experts and Plaintiff's own medical history notes.  While Plaintiff does have a diagnosis of diabetes mellitus, a diagnosis is not enough to satisfy the listing.  Plaintiff must have medical impairments that meet the entirety of the listing, which Plaintiff in this case does not satisfy.

22

While Plaintiff argues that "he has difficulty picking up things or grabbing things and has difficulty sleeping due to pain," the record supports the ALJ's finding that Plaintiff does not suffer from these impairments to the extent required by the listing. (Pl.'s Br. 17). There is ample evidence within the medical record, including Dr. Augustin's review, that suggests Plaintiff had no difficulty with fine motor movement. (Tr. 333). Additionally, the interview with the Social Security Department reported Plaintiff did not appear to have any mobility issues. (Tr. 92).

While Plaintiff's transcript conveys his complaints of pain, the ALJ is in the best position to make the decision regarding Plaintiff's reliability. The weight that should be given to his subjective complaints of pain and the objective, numerous reports and observations regarding plaintiff's ability to grab things, and his gait was further aptly considered by the ALJ. The ALJ's opinion persuades this Court that he did weigh all evidence in evaluating whether Plaintiff had been disabled from February 23, 2003 through September 16, 2008. The medical evidence is consistent with the finding that Plaintiff did not exhibit the necessary medical conditions to meet the criteria for disability under 9.08 of the Listings. Dr. Augustin's report, along with the observations of the interviewers with the Social Security Department, show that Plaintiff was not disabled for the totality of the time period in dispute. The ALJ's decision is supported by substantial evidence.

### 2. Listing 1.02

Listing 1.02 involves major dysfunction of a joint, due to any cause, characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion, or abnormal motion, accompanied with findings by accepted medical imagining systems of "joint space narrowing, bony destruction, or ankylosis of the" joint with one major weight bearing joint being involved. This results in the inability to ambulate or involves one major peripheral joint in each upper

extremity that is unable to perform fine and gross movements."

The ALJ adequately addresses Plaintiff's failure to satisfy the requirements of 1.02, citing the same reasons as his failure to satisfy the requirements for Listing 9.08 - the medical report of Dr. Augustin along with the imaging done of his joints.

### 3. Medical Exception to the Listings

"An impairment is medically equivalent to a listed impairment in the Listing of Impairments if it is at least equal in severity and duration to the criteria of any listed impairment."  How We Evaluate Symptoms, 20 C.F.R. § 404.1529(d) (2010).  There are three ways in which medical equivalency can be determined.

The first is if the claimant has an impairment that is described but does not show one or more of the findings specified in the particular listing, or the impairment exhibits all of the findings but one or more of the findings is not as severe as specified, or the claimant has other findings related to their impairment that are of equal medical significance.  Id.

The second occurs when the claimant has an impairment that is not described in the Listings, but when comparing their findings with closely analogous listed impairments it is found that the claimant's impairment is of equal medical significance.  Id.

The third involves a combination of impairments that alone do not meet a Listing, but combined are closely analogous to a listed impairment.  Id.

In determining medical equivalency, a Court is to consider all the evidence in the record and the effects on the claimant.  Vocational factors such as age, education and work experience are not considered.  20 C.F.R. § 404.1501 (2010).

Plaintiff contends that he is entitled to benefits under the medical equivalency listing because

24

of his cardiac impairment and/or circulatory deficiencies.  The statute directs the ALJ to examine all the evidence within the case record regarding the impairment.  The cardiac impairment and circulatory deficiencies were not listed as impairments that affected Mr. Gonzalez's ability to work.  ALJ Elliot did not fail to develop the record, instead he reviewed the record closely and looked at the relation and impact of the impairments that Plaintiff listed.  The medical records provided to this Court do not indicate that the cardiac impairment relates to any of the impairments that were specified as the cause for his inbility to work in his application.

### C. RFC Determination

 The ALJ dedicated almost four pages of his ten page decision to discussing his determination that Mr. Gonzalez has the residual functional capacity ("RFC") to perform the full range of medium work.  (Tr. 18-22).  Medium work is defined as involving "lifting no more than fifty pounds at a time with frequent lifting of objects weighing up to twenty-five pounds." 20 C.F.R. § 416.967(c) (2010).  This Court affirms ALJ Elliot's determination that Mr. Gonzalez is capable of medium work, limited to frequent lifting and carrying of no more than twenty-five to thirty pounds.

Plaintiff argues that the ALJ failed to consider his cardiac and circulatory problems, the support of the RFC determination from Dr. Tan, as well as his severe and non-severe impairments.  As the classifications of severe and non-severe impairments has already been discussed at length, there is no reason to delve into the topic further, besides to reference back to the discussion.  The same can be said for the ALJ using Dr. Tan's opinion as a basis for the RFC determination and his decision regarding the cardiac and circulatory impairments.

The ALJ did not fail to consider all the relevant evidence, as alleged by Plaintiff.  His detailed discussion regarding Plaintiff's medical record is substantial evidence to support his RFC conclusion.

25

There was no error as a matter of law, or failure to perform his duty in determining Plaintiff's RFC capabilities.

### D. Determination that RFC Allows Mr. Gonzalez to Return to Past Relevant Work

The ALJ determined Plaintiff was capable of returning to his past relevant work as a shipping porter, from February 28, 2003 up until the date of the ALJ's decision on September 16, 2008. The ALJ cites Plaintiff's work history and suggests his complaints of leg pain are not credible. As discussed earlier, it is the opinion of this Court that the ALJ substantially discussed all of Plaintiff's testimony, including his complaints of pain. As the finder of fact, the ALJ is in the best position to determine what testimony is credible. The ALJ determined Mr. Gonzalez is capable of past relevant work. Mr. Gonzalez's description of his work was confusing and often conflicting. This Court finds that Plaintiff is capable of returning to his past, relevant work as a shipping porter.

The ALJ's opinion in its entirety supports his finding that Mr. Gonzalez, who is capable of performing medium work, is also capable of returning to his past, relevant job as a shipping porter.

### V.  CONCLUSION

For the reasons stated above, the final decision entered by ALJ Elliot is **affirmed**.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:            September    29   ,  2011
Original:        Clerk's Office
cc:              All Counsel of Record